UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHOENIX LOFQUIST-DEYOUNG,

      Plaintiff,

                                   Case No. 1:24-cv-1181

v.

                                   Hon. Hala Y. Jarbou

DTN MANAGEMENT CO.,

      Defendant.

_____/

## OPINION

Plaintiff Phoenix Lofquist-Deyoung filed this suit seeking damages from her former employer, property manager DTN Management Co., for sexual harassment allegedly visited upon her by her coworkers and retaliation in the form of unlawful discharge. The fifth count of the complaint contends that her firing was prohibited by a common-law rule protecting employees from termination for exercising a statutory right or for refusing to violate the law. (Compl. ¶¶ 70, 72.) DTN, arguing that Plaintiff does not allege facts substantiating either ground for the fifth count, seeks its dismissal. (Mot. to Dismiss 1, ECF No. 6.) Neither wrongful-discharge theory Plaintiff asserts supports her claim, so the Court grants the motion.

## I.    BACKGROUND

Plaintiff was an employee of DTN for an indeterminate period ending in mid-March 2023. (Compl. ¶ 5.) Plaintiff was the property manager of Alpine Slopes Apartments, an apartment building in Comstock Park, Michigan, owned by DTN. (*Id.* ¶¶ 6–7.) In the weeks leading up to the end of Plaintiff's employment by DTN, one of the building's tenants told her that she was being sexually harassed by the maintenance manager. (*Id.* ¶ 7.) After reporting the harassment to

her superiors, Plaintiff herself allegedly became the target for the inappropriate conduct of the maintenance manager and one of his subordinates.  (*Id.* ¶¶ 22–27.)

In early March, shortly before going on vacation, Plaintiff informed two newly assigned subordinates that some units in the building were unsafe because the floors were structurally unsound (*id.* ¶ 29) and instructed them to inspect those units (*id.* ¶ 31).  A DTN vice president said—whether this was before or after Plaintiff spoke to her subordinates is unclear—that "the apartments have to be occupied no matter what the circumstances are" and that construction work could not occur as scheduled because the apartment building was over its budget.  (*Id.* ¶ 30.) During her vacation, Plaintiff's direct supervisor learned about the directions she gave her subordinates.  (*Id.* ¶ 31.)  Plaintiff was fired on March 14, immediately after returning to the office.  (*Id.* ¶ 31.)[1]  No reason was given for Plaintiff's termination.  (*Id.* ¶ 32.)

## II.    LEGAL STANDARD

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) where the plaintiff fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Id.* at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."

---

[1] This allegation is contradicted by the exit interview submitted as an exhibit to Plaintiff's response to the motion to dismiss, which indicates that Plaintiff's last day of employment was on March 7.  (ECF No. 23-1, PageID.147.) Neither party suggests the discrepancy might affect the sufficiency of Plaintiff's claims, so the Court sets the issue to one side.  The Court "expressly" disclaims reliance on the extraneous matter submitted alongside Plaintiff's opposition.  *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 484 (6th Cir. 2020) (emphasis omitted).

*Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

### III.    ANALYSIS

Michigan law provides that an employment contract for an indefinite term can be terminated by either party for any reason, unless the contract provides to the contrary. *Suchodolski v. Mich. Consol. Gas Co.*, 316 N.W.2d 710, 711 (Mich. 1982).  A tripartite exception to that general principle restrains employers from discharging employees for reasons contrary to public policy: a cause of action will lie if one is made available to the involuntarily discharged employee by express statutory grant, if the termination was caused by the exercise of a right implied by a "well-established legislative enactment," or if the employee was fired for failing or refusing to violate the law. *Stegall v. Res. Tech. Corp.*, No. 165450, 2024 WL 3503503, at *5 (Mich. July 22, 2024) (quoting *Suchodolski*, 316 N.W.2d at 712).

The three *Suchodolski* exceptions are merely "examples" that do not exhaust the circumstances under which an employee's discharge might "contravene[] public policy." *Whiting v. Allstate Ins. Co.*, No. 08-cv-12991, 2010 WL 956030, at *4 (E.D. Mich. Mar. 15, 2010) (quoting *McNeil v. Charlevoix County*, 772 N.W.2d 18 (Mich. 2009)), *aff'd*, 433 F. App'x 395 (6th Cir. 2011).  But out of caution about multiplying judge-made exceptions to the contours of a relationship as significant—and litigable—as that between employer and worker, Michigan courts have refrained from extending the public-policy exception beyond "those situations that fall within the *Suchodolski* examples or are closely related to them." *Id.*  Only an employee's termination for

"exercising a right guaranteed by law, executing a duty required by law, or refraining from violating the law" offends public policy in an actionable way. *Landin v. Healthsource Saginaw, Inc.*, 854 N.W.2d 152, 160 (Mich. 2014).

An employee must establish four elements to make out a wrongful-discharge claim based on public policy: (1) protected activity on the employee's part corresponding to one of the three *Suchodolski* exceptions, (2) knowledge of the activity by the employer, (3) adverse action against the employee, and (4) a causal link between the employee's conduct and the adverse employment action. *Id.* at 163–64; *Sevilla v. Heartland Health Care Ctr.-Hampton*, No. 326521, 2016 WL 3542395, at *5 (Mich. Ct. App. June 28, 2016).  Plaintiff's fifth count invokes the latter two *Suchodolski* exceptions (*see* Resp. 3, ECF No. 23), but she satisfies neither.  Her wrongful-discharge claim therefore fails at the first step.

## A.    Statutorily Conferred Right

Plaintiff first contends that she was fired for exercising a right conferred "by a well-established legislative policy."  (Resp. 4.)  Her effort to fit her claim into that *Suchodolski* exception fails at every step.  Most importantly, she cannot identify a source of law protecting her right as DTN's employee to refuse to rent unsafe units.

Michigan courts have rarely recognized a cause of action for discharging an employee for exercising a statutory right.  The leading example is *Sventko v. Kroger Co.*, which permitted suit by an employee discharged in retaliation for filing a workers' compensation claim.  245 N.W.2d 151 (Mich. Ct. App. 1976).  To permit employers to sanction employees for invoking a remedy expressly guaranteed to them by statute, the court reasoned, threatened to render that remedy a nullity.  *Id.* at 153–54.

*Sventko* is largely explicable as filling an apparently unintended gap in the workers' compensation statute.  The law criminalized the consistent firing of employees before their

4

becoming eligible for workers' compensation, Mich. Comp. Laws § 418.125, but did not prohibit retaliation against those who file a claim for compensation. That prohibition was made express in a later enactment. Mich. Comp. Laws § 418.301. Recognizing *Sventko* as a gap-filler in the unusual case of a statute conferring a right on employees without also prohibiting retaliation for its exercise explains why "the only situation to which" the well-established-right exception "has been applied thus far is the termination of an employee in retaliation for filing a workers' compensation claim." *Landin*, 854 N.W.2d at 162. Only one other right—that of an employer's collective-bargaining negotiator to be free of union pressure—has been seriously considered by the state appeals courts in a precedential opinion. *See Garavaglia v. Centra, Inc.*, 536 N.W.2d 805 (Mich. Ct. App. 1995) (alternative holding); *see also Calabrese v. Tendercare of Mich. Inc.*, 685 N.W.2d 313, 319 (Mich. Ct. App. 2004) (holding that the claim in *Garavaglia* was preempted by the NLRA).[2]

Plaintiff admits that Mich. Comp. Laws § 554.139, the statute she relies on to establish the existence of a public policy against firing employees for preventing the rental of unsafe residences, does not extend any rights to a landlord's employees. (Resp. 5.) She attempts to overcome this fatal deficiency through the creative argument that as DTN's tenant, she also enjoyed the right guaranteed by the statute to the "benefit of the covenants" it obliges landlords to make. (Resp. 4.) But the rights Plaintiff possesses in her capacity as a tenant have no bearing on her rights as an employee. As a tenant, Plaintiff had a right to the same covenants from DTN as every other lessee. That right ran only to the apartment Plaintiff herself rented and the building's common areas. Mich. Comp. Laws § 554.139(1)(a). It did not encompass the right that other apartments be kept

---

[2] In the wake of *Stegall v. Research Technology Corp.*, discussed below, the court of appeals has taken tentative steps toward expanding the statutory-right exception. No published opinion has done so, however, and the new cases all involve statutes clearly conferring rights on employees. *See Wilk v. State Bank*, No. 357707, 2022 WL 3568680, at *6 (Mich. Ct. App. Aug. 18, 2022) (wages and fringe benefits act).

in reasonable repair.  Nor did it grant Plaintiff the right to "instruct" her landlord's agents (that is, her subordinates) to inspect apartments' safety before renting them out.  (Resp. 2.)  Still less did it render Plaintiff immune from discharge for giving that instruction.  Plaintiff can point to no authority permitting an employee to base a wrongful-discharge claim on a right inuring to them because of a separate contractual relationship with their employer, like that between landlord and tenant.  Nor does she explain why a cause of action intended to regulate employment contracts should take cognizance of rights with no connection to Plaintiff's status as an employee.  Plaintiff's equivocal theory does not persuade.  The Court finds that section 554.139 vested Plaintiff with no rights vis-à-vis her employer, at least in her capacity as an employee.

## B.    Violation of Law

A second basis for Plaintiff's claim that her firing was against public policy is that she was fired for refusing to break the law.  In its motion and reply, DTN contends that this ground fails because Plaintiff does not allege that the company explicitly directed her to violate the law.  (Mot. 13.)  The premise supporting that argument is false: a discharge based on an employee's compliance with the law is just as actionable as a discharge for expressly refusing to violate the law.  DTN's better argument is that Plaintiff does not plausibly allege that the conduct she accuses DTN of was truly unlawful, in the sense that DTN could be held liable for it.  Absent those allegations, Plaintiff's alternative theory must be rejected.

DTN's frontline position is that an employer must affirmatively demand that an employee violate the law for liability to lie.  DTN points out that Plaintiff does not allege that she was directed to falsely covenant that apartments were safe or to refrain from inspecting units before leasing them out.  (Resp. 13.)  This position does not hold water: either "failure or refusal of the employee to violate a law" is an impermissible ground for termination.  *Landin*, 854 N.W.2d at 159.  That

"failure" constitutes an independent ground implies that an employee need not be presented with an illegal demand outright before their conduct becomes protected.

DTN's argument is also without support in the cases.  The notion that a demand to violate the law is necessary before a discharge will be actionable is belied by *Stegall v. Research Technology Corp.* (*Stegall II*), 976 N.W.2d 667, 668 (Mich. 2022), which held that *reporting* a suspected violation of law to one's employer can be a sufficient basis for a public-policy claim. In that case, there was no allegation that the plaintiff had been directed to violate the asbestos regulations he claimed were not being followed, or even that he was encouraged to ignore the violation before making the report.  *Stegall v. Res. Tech. Corp.* (*Stegall I*), No. 341197, 2019 WL 4671167, at *2 (Mich. Ct. App. Sept. 24, 2019).  Yet Michigan's supreme court held that the court below erred in requiring proof of an actual violation of law for the plaintiff to resist.  *Stegall II*, 976 N.W.2d at 668.

The point is also made explicitly by federal courts applying Michigan law.  The Sixth Circuit held long ago that Michigan courts entertaining "a wrongful discharge claim" do not require "a showing of a directive or request by the employer."  *Morrison v. B. Braun Med. Inc.*, 663 F.3d 251, 257 (6th Cir. 2011).  The Eastern District of Michigan has explained that "a refusal to violate does not require the employer's direction to violate a law, only the plaintiff's refusal to do so."  *Simpson v. Total Renal Care*, 629 F. Supp. 3d 680, 688 (E.D. Mich. 2022).  It has also denied a motion to dismiss premised on the absence of such a direction. *See Giron v. Tyco Elecs. Corp.*, No. 2:16-cv-11803, 2016 WL 7405805, at *1 (E.D. Mich. Dec. 22, 2016).

Finally, not requiring a prior demand is sensible.  Not every employer who wants their employees to buck the law will ask them to do so explicitly.  A workplace may informally foster the expectation that some laws are to be ignored or skirted and penalize compliance without stating

that expectation blatantly.  Requiring an employee to show that they had the choice between abiding by the law and termination put to them directly would allow employers who are both unscrupulous and cautious to escape liability for their wrongful discharges.  Defendant's contrary position is not well-taken.

DTN finds its target when it points out that Plaintiff has not alleged that DTN violated or was going to violate the law.  (Reply 5–6, ECF No. 24.)  Plaintiff adequately pleads that she knew about the unsafe condition of some of the rental units she was responsible for (Compl. ¶ 29), that DTN nevertheless expected her to have all apartments be occupied "without regard to their physical condition" (*Id.* ¶ 30), and that DTN knew she directed her subordinates to inspect units whose structural integrity was in question (*Id.* ¶ 31).

Completely absent from the complaint, however, is any indication that DTN intended to violate the law to achieve full occupancy.  Nowhere does Plaintiff claim that having all units be occupied would necessarily violate section 554.139, which only requires that a landlord "covenant[]" to every renter that the leased premises will be kept "in reasonable repair during the term of the lease."  Nor does Plaintiff say that she understood DTN's expectation to be that *she* should violate the law, such as by misrepresenting the condition of the apartments, which could have been unlawful if the weakness of the apartment floors was not open and obvious.  *See Calef v. West*, 652 N.W.2d 496 (Mich. 2002); *Oraha v. Troy Motors, Inc.*, No. 358183, 2022 WL 3330152, at *2 (Mich. Ct. App. Aug. 11, 2022) (wrongful-termination claim will lie if employee adequately alleges that employer attempted to involve him in common-law fraud or negligent misrepresentation); *cf. Stefanski v. Saginaw Cnty. 911 Commc'ns Ctr. Auth.*, No. 166663, 2025 WL 1107897, at *5 (Mich. Apr. 14, 2025) (whistleblower statute protects against adverse action for reporting violations of common-law obligations in addition to statutes).  And she fails to

explain why, if this was in fact DTN's expectation, merely directing her subordinates to inspect selected units while she was on vacation would have raised her employer's hackles.

In its current form, the complaint's suggestion that Plaintiff was terminated for failing to violate the law does not rise above "mere speculation." *Korth v. Efficient & Reliable of Mich.*, No. 268147, 2006 WL 2270386, at *3 (Mich. Ct. App. Aug. 8, 2006). Plaintiff's violation-of-law theory therefore fails.

## IV.    CONCLUSION

Plaintiff's allegations cannot support a wrongful-termination claim premised on either *Suchodolski* exception she invokes. This necessitates dismissal of the claim. As DTN only moved to dismiss the fifth count of the complaint, Plaintiff's claims under Title VII and the Elliott-Larsen Civil Rights Act are unaffected.

Dated: May 30, 2025                              /s/ Hala Y. Jarbou
                                                 HALA Y. JARBOU
                                                 CHIEF UNITED STATES DISTRICT JUDGE